IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

HOPE ELLY,                          )
                                    )
            Plaintiff,              )
                                    )
v.                                  )          CIVIL ACTION
                                    )
                                    )          1:18-cv-114-HSO-JCG
HANESBRANDS INC.,                   )
                                    )
            Defendant.              )
                                    )

## COMPLAINT

**COMES NOW** the Plaintiff, Hope Elly, ("hereinafter Plaintiff") through her undersigned counsel and files her Complaint under Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12181 et seq for declaratory and injunctive relief.

### JURISDICTION, PARTIES, AND ARTICLE III STANDING

1.  This is an action for declaratory and injunctive relief pursuant to Title III of the ADA and its implementing regulations, and this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2.  Venue is proper in this Court, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Southern District of Mississippi.

3.  Plaintiff, Hope Elly, suffers from cerebrovascular accidents, which are more commonly known as strokes. These strokes have affected both her motor and sensory functions, which causes inactivity and/or paralysis of the muscles; therefore, maintaining balance, walking, and the ability to use her hands are extremely difficult. As a result of her disability, she relies on mobility aids for

locomotion. The extent of Ms. Elly's physical disabilities limits her ability to care for herself, perform manual tasks, walk, stand, lift, bend, grab, twist, and work, all of which are major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Ms. Elly is, accordingly, a person with a disability pursuant to the Americans with Disabilities Act, in that she has a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; See also 28 C.F.R. § 36.104.

4.    Defendant, Hanesbrands, Inc., (hereinafter "Hanes"), is a corporation that is both registered to conduct business and is conducting business within the State of Mississippi sufficient to create both general and specific in personam jurisdiction. Upon information and belief, Hanesbrands, Inc., "owns" and "operates" the Hanes retail store ("retail store") located at 10535 Factory Shop Blvd., Gulfport, Mississippi 39501. 42 U.S.C. § 12182. The retail store is a commercial facility in that the facility is intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)((A). Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendant's establishment is a place of public accommodation in that it is a retail store providing clothing and apparel to the public. Accordingly, it is covered by the ADA and must comply with the Act.

5.    All events giving rise to this lawsuit occurred in the Southern District of Mississippi and the Defendant is a citizen thereof.

6.    Plaintiff Hope Elly, enjoys vacationing in the Mississippi Gulf Coast area because she enjoys the different types of entertainment, nightlife, shopping and food variety that the Gulf Coast offers. Plaintiff has recently visited the

Gulfport Premium Outlets including the Hanes retail store. She intends to continue going to Hanes because she enjoys Hanes newest modern fashion offering a premium variety of name brand items at affordable prices. Plaintiff will return not only to shop, but also to confirm compliance with the ADA by the Defendant. Plaintiff cannot provide a specific time and date upon which she will return to the retail store because she has not and should not be expected to engage in such definite future planning. Plaintiff, like other retail store customers, often patronizes a retail store on the spur of the moment. Nevertheless, Plaintiff definitely intends to return to the retail store.

7. Because of the barriers described herein, Plaintiff has been denied full and equal enjoyment of the Defendant's premises on the basis of her disabilities.

8. Plaintiff accordingly, has Article III standing to pursue this case because (1) she is a person with a disability, pursuant to the statutory and regulatory definition; (2) the Defendant's retail store is a place of public accommodation, pursuant to the statutory and regulatory definition; (3) she has suffered a concrete and particularized injury by being denied access to the establishment by architectural barriers, by being denied access by the Defendant's practices described herein, and by Defendant's denial of the use of the retail store for her full and equal enjoyment as compared to people without disabilities. and (4) Furthermore, due to these injuries, there exists a genuine threat of imminent future injury as long as the barriers described remain at the facility.

### COUNT ONE
*(Architectural Barriers)*
**Failure to Design and Construct According to ADA Standards**

9.    Plaintiff incorporates by reference and realleges all the paragraphs above.

10.   Defendant has failed to design and construct this retail store in accordance
with the ADA standards as required and has failed to bring the retail store
into compliance with the applicable ADA Standards when the facility was
subsequently altered.

11.   In enacting the ADA, Congress found, among other things that Persons with
disabilities continually encounter various forms of discrimination, including
outright intentional exclusion, the discriminatory effects of architectural,
transportation, and communication barriers, overprotective rules and policies,
failure to make modifications to existing facilities and practices, exclusionary
qualification standards and criteria, segregation, and relegation to lesser
services, programs, activities, benefits, jobs, or other opportunities. 42 U.S. C.
§12101(A)(5).

12.   In response to these findings, Congress explicitly stated that the purpose of
the ADA was to:

    **A.** Provide a clear and comprehensive national mandate for elimination
of discrimination against individuals with disabilities;

    **B.** Provide clear, strong, consistent, enforceable standards addressing
discrimination against individuals with disabilities; and

    **C.** Invoke the sweep of congressional authority, including the power to
enforce the Fourteenth Amendment and to regulate commerce, in

order to address the major areas of discrimination faced on a daily basis by people with disabilities. 42 U.S.C. § 12101(b)(1)(2) and (4).

13. The ADA provides that facilities constructed prior to January 26, 1992, are considered an "existing" "facility, and, therefore, those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, were required to be *readily accessible to and usable by individuals with disabilities*, including *individuals who use wheelchairs*. 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.* § 36.402. "Readily accessible to and usable by. . ." was and is the "new construction" standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 *C.F.R.* § 36.406. The only defense for a covered entity failing to strictly comply with the ADA "new construction Standards" is if the design and construction of the building is "structurally impracticable". 42 U.S.C. § 12183(a)(1). The "structural impracticability" defense applies only in rare circumstances of extraordinary terrain. 28 *C.F.R.* § 36.401(c). "Readily accessible to and usable by. . ." is also the "alterations" standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to the maximum extent feasible. 42 U.S.C. § 12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

14.   "Alterations" must be made to the maximum extent feasible.  42 U.S.C. §
      12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public
      accommodation or commercial facility that affects or could affect the usability
      of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

15.   New construction and alterations must comply with either the Justice
      Department's 1991 Standards for Accessible Design, or the 2010 Standards
      for Accessible Design. 28 *C.F.R.* § 36.406 establishes whether the 1991
      Standards for Accessible Design or 2010 Standards for Accessible Design
      apply: New construction and alterations subject to §§ 36.401 or 36.402 shall
      comply with the 1991 Standards if the date when the last application for a
      building permit or permit extension is certified to be complete by a State,
      county, or local government is before September 15, 2010, or if no permit is
      required, if the start of physical construction or alterations occurs before
      September 15, 2010. 28 *C.F.R.* § 36.406(a)(1). New construction and
      alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991
      Standards or with the 2010 Standards if the date when the last application for
      a building permit or permit extension is certified to be complete by a State,
      county, or local government is on or after September 15, 2010, and before
      March 15, 2012, or if no permit is required, if the start of physical
      construction or alterations occurs on or after September 15, 2010, and before
      March 15, 2012. 28 *C.F.R.* § 36.406(a)(2). New construction and alterations
      subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the
      date when the last application for a building permit or permit extension is

certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. *Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable.* See 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

16.    Plaintiff is informed and believes based on publicly available information that the interior build out of the retail store was first constructed in 1995.

17.    Plaintiff is further informed and believes based on publicly available information that the retail store underwent alterations and/or improvements in 1996 with subsequent improvements thereafter.

18.    The following is a specific, although not exclusive, list of unlawful physical barriers, dangerous conditions and ADA violations which preclude or limit Plaintiff's ability (because of her disabilities) to access the Property and/or fully and equally enjoy the goods, services, facilities, privileges, advantages and/or accommodations offered in the facility. The citations are to the ADA 2010 Standards, because the 2010 Standards are applicable to modifications made after March 15, 2012. 28 C.F.R. § 36.406(5)(ii).

      **A.** Defendant fails to maintain an accessible route throughout the interior aisles of the store, which includes maintaining At least one accessible

route that connects the facility entrance with all accessible spaces and elements within the facility which are connected by a circulation path. §206.2.4.

**B.** Defendant fails to maintain the self-service shelves on an accessible route. located within the store. §402 and §225.2

**C.** Defendant fails to maintain the accessible route among the merchandise aisles in operable condition which results in rendering the required clear floor path unusable by individuals with disabilities because the display tables, clothing racks, and other items obstruct the clear floor space. §403.5.1.

**D.** Defendant fails to maintain the accessible route throughout the store aisles which includes maintaining the accessible route's clear width at turns and/or passing spaces. This has the discriminatory effect of rendering the shopping aisles containing goods as unusable by people with disabilities. §403.5.2 and §403.5.3.

**E.** There is not at least one of each type of sales and/or service counter which is maintained in operable condition in violation of the ADA Standards so that a portion of the counter surface measuring a minimum length of 36 inches and a maximum height of 36 inches above the finish floor is usable by individuals with disabilities. This includes maintaining a clear floor or ground space complying with §305.5 positioned for either a parallel or side approach adjacent to the

36-inch minimum length of counter to include the required knee and toe clearance. §306 and §904.4;

F. Defendant has failed to maintain the surface of the sales counter so that it is free from obstructions, which has a discriminatory effect on individuals with disabilities attempting to use the counter;

G. There is not at least 5%, but no fewer than one, of each type of dressing room in each cluster of rooms that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the required t-shaped and/or circular turning space within the dressing room does not prohibit disabled individuals from maneuvering independently throughout the room. § 222.1 and § 803.2.

H. The dressing room door to the purported accessible dressing room does not have the required maneuvering clearance at both the pull or push side of the door. §404.2.4;

I. There is no room identification sign designating the dressing room with the international symbol of accessibility. §216.2 and §703;

J. The dressing room does not provide the required 30x48 inches of clear floor space beyond the arc of the inward door swing or alternatively, an outward door swing. § 803.3.

K. Defendant has failed to maintain the dressing room in operable condition because the bench is restricting the dressing rooms usability by individuals with disabilities. § 803.4;

**L.** The dressing room bench does not provide the required clear floor space at the end of the bench seat and parallel to the short axis of the bench. § 903.2.

**M.** The dressing room bench does not measure a minimum length of 42 inches and a depth of 20 inches minimum to 24 inches maximum. § 903.3;

19. The above listing is not intended to be an all-inclusive list of the barriers, conditions and violations of the ADA encountered by Plaintiff and existing at the Property. Although, the above listing, in and of itself, denied and still denies Plaintiff, due to her disabilities, and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations offered at the Property in violation of the ADA. Plaintiff requires full and complete inspection of the Property, with full access thereto, in order to determine all of the Defendant's discriminatory acts violating the ADA relevant to Plaintiff's disabilities.

20. Plaintiff believes that violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the Statute.

21. Failure of the Defendant to "design and construct" and alter this facility in compliance with the ADA's New construction standards is a direct violation of the statute, and more specifically, has a discriminatory impact on Plaintiff and all persons similarly situated.

## COUNT TWO

*Failure to modify policies, practices, and procedures which deny equal access to benefits and services*

**(42 U.S.C. § 12182(b)(2)(A)(ii))**

22.    Plaintiff incorporates by reference and realleges all the paragraphs above.

23.    The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A))(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words, persons with disabilities must receive equal benefits as compared to the benefits received by persons without disabilities. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

24.    ADA, Title III requires a public accommodation to provide individuals with disabilities *more than simple physical access.* Creating unlawful architectural barriers by failure to design, construct and alter the facility in accordance with

the ADA Standards as set forth in Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

25.   For this reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in *Rendon v. Valleycrest Prod., Ltd.* 294 F.3d 1279, (11th Cir. 2002) that:

> *"A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both <u>tangible barriers</u> (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. §*

> *12182(b)(2)(A)(iv), and <u>intangible barriers</u> (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges."*

26. Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes: "*a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.*"

27. Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, full and equal access to goods or services to persons with disabilities.

28. Defendant either has no policies, practices, and procedures to remove architectural barriers or else does not abide by them. The architectural barriers identified in Count One establish that Defendant has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

29. Defendant's obvious disregard for compliance with the ADA's alteration standards reflects, at a minimum, a policy which excludes persons with disabilities in the planning and implementation of alterations of the facility. Renovation of the facility afforded Defendant a post-construction opportunity to bring the retail store into compliance with the ADA Standards, but Defendant's policies and practices of non-compliance with the ADA's

alteration standards effectively ensure that persons with disabilities continue to have unequal access to the services and accommodations offered.

30.   Defendant's practices at the retail store literally create barriers and in so doing deny Plaintiff the full and equal enjoyment of the establishment. Those practices include but are not limited to:

A. The merchandise display racks and counters are positioned in a way that has a discriminatory effect in practice of prohibiting individuals with disabilities from being afforded the opportunity to maneuver to access the retail shopping aisles and turning to maneuver to access the adjacent aisles;

B. Defendant has ineffective policies, practices, or procedures that ensure that there is an accessible route throughout the store merchandise and display aisles which is usable by individuals with disabilities. As the result, individuals with disabilities are excluded, denied services, segregated, or treated differently than other individuals without disabilities;

C. Defendant fails to provide an accessible route to and throughout the dressing rooms in its store due to an obvious policy and procedure of locating merchandise, display racks and/or furniture within the required clear floor space on the accessible route. This means Plaintiff cannot access, travel and move throughout the dressing rooms in the same manner as non-disabled people;

**D.** The design policy and practice used by Defendant fails to provide accessible dressing rooms throughout its store to Plaintiff and other similarly situated individuals. Therefore, Plaintiff cannot try on clothes or move into and throughout the dressing rooms as freely or independently as persons without disabilities;

**E.** Defendant fails to provide service and/or checkout counters at a reachable height. Because the counters are not accessible for people with physical disabilities, Defendant appears to have no policy of providing assistance or allowing a person with a disability to independently access the services or conduct transactions at the counters;

**31.** As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant either has no policies, practices, or procedures, or else it has failed to implement them, to ensure that any removal of architectural barriers is effective and permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

**32.** To date, the Defendant's discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations.

33. Defendant, "owns" and "operates" or "leases" the retail store which is the subject of this action and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

34. Plaintiff, hereby, provides sufficient notice of her demands for a modification of Defendant's policies, practices, and procedures.

35. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

36. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

### COUNT THREE
*Plaintiff has been denied Full and Equal Enjoyment of the goods, services and facilities of the retail store*
**(42 U.S.C. §12182(a))**

37. Plaintiff incorporates by reference and realleges all the paragraphs above.

38. 42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

39. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

40.    Congress also found that: "*individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities,* 42 U.S.C. § 12101(a)(5); "*the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;*" 42 U.S.C. § 12101(a)(7). Congress even found that: "*the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.*" 42 U.S.C. § 12101(a)(8).

41.    In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

42.    The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the

goods, services, facilities, privileges, advantages, or accommodations of an entity" 42 U.S.C. § 12182(a)(i).

43.   The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

44.   To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination"* including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.* 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

**45.**    For that reason, the Act applies to any barrier that denies or diminishes disabled individuals' *full and equal enjoyment* of the privileges and *services* offered by the public accommodation. 42 U.S.C. 12182.

**46.**    The keystone for analysis of full and equal enjoyment is Defendant *must start by considering how its facilities are used by non-disabled guests and then take reasonable steps to provide guests with disabilities with a like experience. Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005).

**47.**    Plaintiff demands to be afforded the same level of service and treatment as that offered to non-disabled individuals, so as to be offered the same experience as those not disabled.

**48.**    Plaintiff specifically and definitely wants to return to the Defendant's retail store to enjoy Hanesbrand's newest modern fashion offering a premium variety of name brand items. More specifically, Plaintiff demands to be afforded the same level of service and same experience that is offered to non-disabled individuals. All the following failures by Defendant inhibited Plaintiff from having the same experience that non-disabled individuals have when shopping at Hanes:

    **A.** Defendant fails to provide an accessible route to and throughout the shopping retail aisles which means that shoppers with disabilities, unlike there non-disabled counterparts, must struggle just to move throughout the retail aisles independently, if at all;

    **B.** Defendant fails to provide the same experience by making it nearly

impossible for people with disabilities to access the items on the sales/service counters throughout the store, while customers without disabilities can independently access the counters and the services provided there;

C. Defendant fails to provide an accessible route to and throughout the dressing rooms which means that unlike people without disabilities, shoppers with disabilities struggle just to enter and exit the dressing rooms independently, and often find them unusable;

D. The inaccessible elements built into the dressing room, such as the non-compliant dimensions, the lack of clear floor space, as well as the height and depth of the bench, further create unequal access to the shopping experience for individuals with disabilities, and, therefore, has a discriminatory impact;

E. E. Defendant fails to maintain accessible signage so that people with disabilities do not know what route and what facilities are usable by individuals with disabilities. Defendants failure to identify by signage whether or not elements and spaces are accessible results in customers with disabilities receiving inferior treatment, segregated or otherwise treated differently.   Unlike non-disabled people, customers with disabilities have to guess and speculate and determine by trial and error what features are useable by them;

49. Accordingly, Defendant's "use" of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendant has

segregated and separated persons with disabilities from non-disabled individuals. "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected.*" *H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA provides a "broad mandate" to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream of American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*).

50.   Defendant discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facility during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of the retail store.

51.   Defendant's conduct and Defendant's unequal treatment of Plaintiff constitute continuous violations of the ADA and absent a Court ordered injunction Unlike people without disabilities, doing so, Defendant will continue to treat Plaintiff and others similarly situated unequally.

52.   Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitutes continuous discrimination and absent a Court ordered injunction, Defendant will continue to not maintain the required   accessible   features   at

Defendant's facility.   28 C.F.R.§ 36.211(a).

53.   Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

54.   Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendant.

**WHEREFORE**, premises considered, Hope Elly, demands judgment against the Defendant on Counts One, Two, and Three, and requests the following injunctive and declaratory relief:

1.   That the Court declare that the property owned and business operated by the Defendant as well as all Defendant's illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2.   That the Court enter an order directing the Defendant to alter the facility to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and its implementing regulations, as stated in Count One;

3.   That the Court enter an order, in accordance with Count Two, directing the Defendant to modify its policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendant to make its business practices consistent with ADA Title III in the future;

4.   That the Court enter an order directing the Defendant to provide Plaintiff full and equal access both to the Hanes experience and to the use of the

establishment, and further order Defendant to maintain the required accessible features at the facility so that Plaintiff and others similarly situated are offered the same experience that is offered to members of the general public without disabilities, as stated in Count Three. 42 U.S.C. § 12182(a).;

5.  That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiff; and

6.  That the Court award such other, further, and different relief as it deems necessary, just, and proper.


Respectfully Submitted, this _____ Day of April, 2018.


/s/ _____

**Pshon Barrett**
MS- 2071
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
Pshon.Barrett@ADA-Firm.com
*Attorney for the Plaintiff*


/s/ _____

**Bradley D. McAdory**
MS BPR # 10545
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
BDM@ADA-Firm.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned

Complaint for service of process by USPS mail or electronic mail, postage prepaid and

properly addressed this _____ day of April, 2018 to the following:


**Hanesbrands, Inc.**
c/o Corporation Service Company
Attn.: Registered Agent
5760 I-55 North, Suite 150
Jackson, MS 39211

/s/ _____

**Pshon Barrett**
MS- 2071
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
Pshon.Barrett@ADA-Firm.com
*Attorney for the Plaintiff*